In the Matter of the Estate of GEORGIANA G. R. WENDEL, Deceased.

Surrogate's Court, New York County, April 23, 1936.

*Jacob Galerston* [*I. Gainsburg* of counsel], for the petitioner, Meta Wendel Strauch.

*George Flint Warren, Jr.,* and *Root, Clark, Buckner & Ballantine* [*John M. Harlan, Chief Counsel, Henry J. Friendly* and *John E. F. Wood* of counsel], for Stanley Shirk, as surviving administrator, etc., of Georgiana G. R. Wendel, deceased, and others.

FOLEY, S. This proceeding involves the latest and it is hoped the last attempt to impose a fraudulent claim of relationship upon the members of the family of Ella V. von E. Wendel. Meta Wendel Strauch, the petitioner, claiming to be the illegitimate daughter of the decedent, Georgiana G. R. Wendel, sought to have established her status as sole next of kin, and applied to have opened the final decree made by this court on December 29, 1933, settling the accounts of the administrators of the estate. Under that decree distribution was made to her two sisters, Rebecca A. D. Wendel Swope and Ella V. von E. Wendel, as her sole next of kin. Georgiana died on January 19, 1929. Rebecca died on July 20, 1930, and Ella died on March 13, 1931. Georgiana left an estate approximating $5,000,000. Most of her property found its way into Ella Wendel's estate.

The first formal claim that the petitioner, Meta Wendel Strauch, was an illegitimate daughter of the decedent was made upon the filing of the petition in the present proceeding on May 1, 1935. In it Meta Wendel Strauch asserts that she was born the daughter of the decedent on July 3, 1879, in the city of Bremen, Germany. The evidence submitted upon the hearing before the surrogate completely destroys the contentions of the petitioner and brands her claim as a crude fraud. In the process of exposure, however, it has been necessary for the representatives and the beneficiaries of this estate and of the estate of the decedent's sister to conduct an expensive investigation into the allegations of the petition, to examine twenty-four witnesses in Germany upon commissions issued out of this court, to take the testimony of other witnesses in Massachusetts and New Jersey, and to produce witnesses upon the formal hearing before the surrogate.

This proceeding is of special interest because of similar attempts by fortune seekers to assert claims of relationship to Ella Wendel, the decedent's sister. In the estate of Ella, 2,303 persons filed claims to varying degrees of relationship. Nine finally established their status as the lawful next of kin as relations of the fifth degree of kinship. The claims of 2,294 persons were dismissed. Of this number the great majority pretended to be related in more distant degrees beyond the fifth degree of kinship. The establishment of kinship of persons within that degree necessarily led to a dismissal of those asserting a relationship beyond it. There were other claimants who asserted that they were within the third, fourth and

fifth degrees. The trials of the status of these claimants revealed the falsity of their pretensions and exposed the spurious, forged and fraudulent evidence upon which they were based.

Thomas Patrick Morris claimed to be the nephew of Ella Wendel and the son of her brother, John G. Wendel. The nature of the evidence in his case was considered by me and his claim dismissed in *Matter of Wendel* (146 Misc. 260). It was shown that he had attempted to perpetrate a fraudulent marriage certificate of his alleged mother and father, a spurious will of his alleged father and other fabricated documents in order to substantiate his claim. The record in the case was directed by the surrogate to be transmitted to the district attorney of New York county for appropriate action. Morris was indicted and convicted of conspiracy and sentenced to a term of three years. He subsequently sought to set aside his conviction upon the ground of newly-discovered evidence in connection with his claim that he was the son of John G. Wendel by one Mary Ellen Devine. In the same application, and by way of contradiction, he presented an additional claim that he was the illegitimate child of John G. Wendel and his sister, Mary Wendel, by an incestuous relationship. The motion for a new trial was denied by Judge MORRIS KOENIG of the Court of General Sessions of New York County in a very comprehensive opinion (N. Y. L. J. Oct. 20, 1934, p. 1353).

A second group of claimants, the so-called Dew claimants of Tennessee, in three successive applications, sought to establish their relationship as of the fifth degree. Their claims were based upon an attempt to identify one of their ancestors as an ancestor of Ella Wendel. These claims were dismissed upon the ground that no relationship whatsoever existed between them and Miss Wendel. Again forged documentary evidence was attempted to be foisted upon the court. The judicial records of the courts of Tennessee were shown to have been deliberately altered. The spurious nature of these documents and the willful alterations made in them were revealed upon the trials and discussed in my decisions. (*Matter of Wendel*, 146 Misc 260; 148 id. 884, and N. Y. L. J. April 8, 1933, p. 2101.)

A third group of claimants, residing in Illinois, likewise attempted to prove relationship by spurious documentary evidence consisting of letters claimed to have been written by the relations of Ella Wendel. Two of these letters were dated 1836 and 1841. Investigation revealed that they were written upon paper purchased from the F. W. Woolworth Five and Ten Cent Stores. The paper was manufactured not earlier than 1930, although the writings were dated almost a century before. Their claims were dismissed (N. Y. L. J. Nov. 18, 1932, p. 2218).

It is significant as bearing upon the motives of conspirators in the present application in the estate of Georgiana Wendel that they were associated with a group of persons who sought to establish that they were related to Ella Wendel in the proceedings in her estate. Their contention was that they were distant cousins of Ella Wendel through an alleged common ancestor, one Johann Christian Heinrich Wendel. They formed an association in Bremen, Germany, and raised funds to prosecute their claims. Meta Strauch, the petitioner here, was not included in the group for some unexplained reason, although twenty-three of her close relations filed formal claims in this court. The testimony in this proceeding, however, shows that she contributed 500 marks to the expenses of Emil Wendel, one of the agents of the group. Since all of their contentions involved a pretense to relationship beyond the fifth degree of kinship, it became unnecessary to take testimony to determine their status. Sufficient evidence has been adduced in this proceeding to show that they were not in the slightest degree related to Ella Wendel.

The conduct of their representatives in the Ella Wendel estate throws light upon their motives here. The foremost active conspirators in the present claim were Gesine Lubben of Bremen, Germany, a sister of the claimant Meta Wendel Strauch, John Lubben of New York city, a nephew of the claimant and a son of Gesine Lubben, Emil Wendel of New York city, a son of another sister of the claimant and by occupation an officer of an American oil tank steamer, and Andreas Wendel of Bremen, Germany, a cousin of the claimant. In the very thorough pedigree records kept in Germany, showing births, marriages and deaths, it was comparatively simple to trace the line of ancestors of the Bremen Wendels and those of the Wendel family in New York. As far as these official records show, the lines of ascent never met. The Bremen Wendels are descended from an ancestor who lived in Berlin. The New York Wendels were descended from an ancestor who lived in Havelberg, Germany.

It has been shown by the evidence in this proceeding that Emil Wendel, one of the conspirators referred to above, in June and July, 1931, visited the pastor of the church at Havelberg, Germany, to inquire about the record of the births and deaths of the Ella Wendel ancestry. In his design to fabricate a basis of a claim of a common ancestor the evidence in this proceeding sufficiently shows that he altered an original record made in Germany in 1741. One of his ancestors was Johann Heinrich Wendel, who was born· in Berlin in 1736. The New York Wendels had a great grand-uncle by name Johann Christian Wendel, born, as stated, in Havelberg

in 1741. There was added to his name in the ancient record book the word " Heinrich " so that the name was made to read Johann Christian Heinrich Wendel. The additional name appears in freshly written ink. It was shown in the testimony before me that the pastor of the church promptly discovered the forgery. The alteration clearly was made to support the claim of the relationship between the two families. It is also of interest that in the office of the Wendel family in New York there was found a certificate of the birth record of Johann Christian Wendel made by the pastor of the church and dated 1846. It is an accurate transcript of the original church record made in 1741. That certificate recites the name of the person born that year as Johann Christian Wendel with the additional given name " Heinrich " omitted. The dismissal by me on August 12, 1932, of the claims of all persons beyond the fifth degree necessarily eliminated all the Bremen claimants as persons interested in the estate of Ella Wendel.

The evidence here shows that immediately thereafter John Lubben and Emil Wendel formulated the scheme to find a person who might be presented as the illegitimate daughter of Georgiana Wendel. It was discovered that there was living in Germany one Ottilie Bensien who had formerly been employed as a nurse and companion to Georgiana Wendel. Emil Wendel wrote her with the suggestion that Georgiana had left an illegitimate child in Germany and that " if this illegitimate child is alive then this child, she or he, is the only heir to the Wendel estate." He suggested that he had information that the child's name was " Flora." Miss Bensien's reply must have been unsatisfactory, for in his second letter Emil suggested that Georgiana Wendel had been in Germany between 1890 and 1892 and was " in love with an Englishman and a man at Carlsbad " and that presumably the child came about in this way and was sent to an orphan asylum under a fictitious name. He advanced the sinister suggestion that no one then alive in New York knew the life of Georgiana and that all of her friends and close relatives were dead. " Of the friends who knew her during her life about 1890 there is no one who can say no or say yes." It is clear from these letters that Emil Wendel did not know whether the child was a boy or girl and that his inquiries were entirely inconsistent with his position here. He stated in his letter to Miss Bensien that the child was born in 1890 or 1892, although the claimant here, his own aunt, was born in 1879. His letter intimated that the father of the child was an Englishman or a man at Carlsbad. In the petition it is asserted that he was a German naval officer.

Having obtained no assistance from Miss Bensien, the conspirators moved back to Bremen. The search for the illegitimate child had

proven fruitless. Conveniently, therefore, the conspirators selected one of their own family, Meta Strauch, the petitioner here, as the impostor. The bar sinister was not unknown to her family and the assertion of illegitimacy could not have disturbed the family pride for there were at least five illegitimates in two generations. This selection of the petitioner appears to have been made in the first instance without the knowledge of the victim. According to the testimony of her own physician in the record, the petitioner is a woman of weak mental condition and an easy prey to illusions and suggestions. In the course of the investigation of the conspirators it was discovered that her birth record read "allegedly legitimate." The official birth records show that her father was Johann Hermann Wendel, and her mother Meta Baarke Wendel. The evidence indisputably shows that she was their legitimate child. Her father seems to have disappeared shortly after her birth. Her mother subsequently became associated with his brother, Frederick Wendel, and had two illegitimate children by him. The couple was subsequently married after the death of the first husband. The first formal step to qualify Meta Strauch, the petitioner, as the illegitimate child of Georgiana Wendel was an application to correct her birth certificate. It was instituted in a tribunal in Bremen under the procedure laid down by German law. The statute requires that the court must hear the parties in interest and provides for the service of process by publication in appropriate cases. Despite the fact that it was alleged and planned to have determined that Meta Wendel Strauch was the illegitimate child of Georgiana Wendel, no process was issued or served upon the legal representatives of Georgiana's estate in New York.

The principal evidence tending to show that Meta was not the daughter of Meta Baarke Wendel, but was the daughter of Georgiana Wendel, was given in that proceeding by Meta Baarke Wendel herself and by Gesine Lubben, a sister of the claimant. The proceeding had been initiated by Gesine Lubben and she testified that she did not even mention its inception to the claimant. The claimant herself was examined but her testimony shows that she made no claim that Georgiana Wendel was her mother, or that Meta Baarke Wendel was not her mother. The order of the German court altering the birth record of the claimant and reciting that she was the illegitimate daughter of the decedent here was made on June 21, 1934. Immediately thereafter steps were taken to formulate the additional proofs required for the filing of the petition in this court.

It is unnecessary to summarize the other testimony given in support of the pretensions of the claimant. Much of it is incompe-

tent under the rules as to pedigree declarations in this State. (*Aalholm* v. *People*, 211 N. Y. 406; *Washington* v. *Bank for Savings*, 171 id. 166.) Such testimony as is competent is unsatisfactory and incredible. It was plainly fabricated by unscrupulous relatives of the claimant in an attempt to obtain the fortune of $5,000,000 which Georgiana Wendel left.

The respondents, on the other hand, by an array of evidence, documentary and oral, have utterly destroyed the charge that Georgiana Wendel ever had an illegitimate child, or that she was in Germany, as claimed by the petitioner, at the time of the latter's birth. Satisfactory evidence has been given that Georgiana Wendel was not in Germany in the years 1878 and 1879, and that she was not in that country at subsequent times when it is contended she visited her alleged daughter there. An uninterrupted succession of official records in Bremen during the period of over fifty years, from July, 1879, the date of the birth, to November, 1933, refutes the assertions by the claimant and the members of her family and establishes that Meta Strauch was the daughter of Johann Hermann Wendel and Meta Baarke Wendel. This documentary evidence included the original birth certificate and the record of the baptism of the claimant. In each case the names of her real mother and father were stated. In December, 1897, Meta Baarke Wendel, the mother of the claimant, appeared in the District Court in Bremen and petitioned for the appointment of guardians for the claimant. She then stated that Meta Strauch was her own daughter and that Meta's father was Johann Hermann Wendel, although she admitted that her child born next after the claimant was illegitimate. In December, 1904, the claimant appeared before the civil authorities to be married. She was required by law to be accompanied by a witness. That witness was her stepfather whom she refers to in her testimony as " Uncle Fritz." It is significant that both the claimant and the witness signed the marriage register and stated that her parents were Johann Hermann and Meta Baarke Wendel. In January, 1923, the mother of the claimant made application to the municipal authorities for support from the poor funds in Bremen. She was required to give the names of her children. The inquiry into her condition and that of her relatives was most careful and formal. At that time she gave the names of all her children and included among them Meta Strauch, the claimant. In November, 1933, John Lubben, the nephew of the claimant, was sued for divorce by his wife. The claimant was called as a witness. She testified, under oath, that the defendant was the son of her sister, a statement entirely inconsistent with her present claim

that she was the daughter of Georgiana Wendel and is not related in any way to her brothers and sisters of the Johann Heinrich Wendel descent. These formal declarations and admissions, which were made at times when there was no reason to misrepresent, demonstrate the nature of the fraud.

For the foregoing reasons, the petition here is dismissed upon the merits, with costs.

When the matter was called for trial, the attorney for the claimant withdrew from the proceeding, undoubtedly with knowledge of the spurious claims of his client. Two weeks before that date, counsel retained by the attorney for the claimant had likewise withdrawn from the proceeding. The investigation and exposure of the fraud have caused the beneficiaries of the Ella Wendel estate, and other persons interested in the estate of Rebecca Swope, thousands of dollars. Most of these beneficiaries were charitable, educational or religious corporations. The suspicions of the attorneys for the petitioner should have been aroused immediately by the dilatory assertion of this fantastic claim of kinship. With a knowledge of the prior proceedings and the decisions dealing with the exposure of the fictitious claims in the Ella Wendel estate, the attorneys should have declined to represent her.

Because of the unusual degree of fraud and perjury and the forged documents that have been presented in this proceeding and in other proceedings involving the Ella Wendel estate, the surrogate believes that the attention of attorneys generally should be drawn to their responsibilities and the rules of ethics contained in canon 31 of the American Bar Association and the New York State Bar Association. It reads as follows: " No lawyer is obliged to act either as adviser or advocate for every person who may wish to become his client. He has the right to decline employment. Every lawyer upon his own responsibility must decide what business he will accept as counsel, what causes he will bring into Court for plaintiffs, what cases he will contest in Court for defendants. The responsibility for advising as to questionable transactions, for bringing questionable suits, for urging questionable defenses, is the lawyer's responsibility. He cannot escape it by urging as an excuse that he is only following his client's instructions."

Moreover, under the thirtieth Canon of Ethics of the two associations, a lawyer " must decline to conduct a civil cause * * * when convinced that it is intended merely to harass or to injure the opposite party or to work oppression or wrong. * * * His appearance in Court should be deemed equivalent *to an assertion on his honor that in his opinion his client's case is one proper for judicial determination.*"

The proceeding here not only led to the imposition of burdensome expense upon the respondents, but also constituted a cruel and baseless reflection upon the memory of Georgiana Wendel. It also led to the waste of the time of the court to the detriment of other litigants. All these results could have been avoided by a careful preliminary investigation by the attorneys for the petitioner.

These observations should constitute a warning to attorneys who may become similarly interested in fictitious claims to relationship to decedents in the Surrogate's Court.

Tax costs and submit order on notice denying upon the merits the application to vacate the decree.